RECEIVED
FEB 0 7 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| ALTON PREJEAN | CIVIL ACTION NO. 05-1860 |
| VS. | JUDGE MELANÇON |
| JO ANNE BARNHART, Commissioner<br>Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Born on December 27, 1954, Alton Prejean ("Prejean") is currently 52 years old. He has a tenth grade education, vocational training in mechanics, and has worked in the past as a truck driver, warehouseman, and pipe tester.[1] Prejean began receiving disability benefits effective January 30, 1992 due to thyroid ophthalmopathy with double vision and eyelid retraction.[2] On May 14, 2002, following a periodic review, SSA sent a Notice of Disability Cessation letter to Prejean notifying him that his disability benefits would terminate as of July, 2002 due to medical improvement of his original impairments and his ability to return to work.[3] Prejean requested reconsideration and on July 26, 2004, a hearing was held before an Administrative Law Judge.[4]

---

[1] Tr. 169.

[2] Tr. 169-174.

[3] Tr. 179-183.

[4] Tr. 492-503.

On August 25, 2004, the ALJ issued a decision finding that as of May 1, 2002, Prejean was no longer disabled because his condition had medically improved to the extent that he could perform a significant number of jobs in the economy.[5] The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner from which Smith now appeals.

## *Standard of Review*

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." Id.; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Id.

## *The ALJ's Decision*

The Secretary may terminate disability benefits if substantial evidence demonstrates that: (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C.

---

[5] Tr. 25.

§ 423(f)(1); Griego v. Sullivan, 940 F.2d 942, 944 (5th Cir.1991). The burden of proof lies with the Secretary in termination proceedings. Waters v. Barnhart, 276 F.3d 716, 718 (5th Cir. 2002); Griego v. Sullivan, 940 F.2d 942, 944 (5th Cir.1991).

The first part of the evaluation process focuses on medical improvement. The regulations define medical improvement as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). A determination of medical improvement "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s)." And a medical improvement is only related to an individual's ability to work "if there has been a decrease in the severity ... of the impairment(s) present at the time of the most recent favorable medical decision and an increase in your functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3).

The second part of the evaluation process involves assessing the ability to engage in substantial gainful activity, which incorporates many of the standards set forth in the regulations governing initial disability determinations. See 20 C.F.R. § 404.1594(b)(5) and (f)(7). The difference in termination proceedings, however, is that the burden of proof lies with the Secretary. Griego v. Sullivan, 940 F.2d at 944.

In evaluating the ability to engage in substantial gainful activity, the Secretary considers, first, whether the claimant can perform past relevant work and, if not, whether the claimant can perform other work. 20 C.F.R. §§ 404.1594(f)(7) and (f)(8).

In determining whether a claimant has regained the capacity to perform substantial gainful activity, the Secretary uses an eight-step sequential analysis:

1. If a claimant is engaged in substantial gainful activity, disability will be found to have ended regardless of the medical findings.

2. If the claimant's impairment meets the severity of an impairment listed in Appendix I, his disability will be found to continue.

3. If the impairment does not meet the Appendix 1 listings, whether there has been medical improvement as shown by a decrease in medical severity must be determined. If so, Step 4 is considered. If there has been no decrease in medical severity, there has been no medical improvement, and Step 5 is considered next.

4. If medical improvement is found, whether the improvement is related to the claimant's ability to do work must be considered. To make this determination, whether or not there has been an increase in the residual functional capacity based on the impairment that was present at the time of the most recent favorable medical determination must be considered.

5. If it is found at Step 3 that there has been no medical improvement or at Step 4 that the medical improvement was not related to the claimant's ability to work, a determination as to whether the exceptions apply must be made. If none apply, disability will be found to continue. If one of the first group of exceptions to medical improvement applies, Step 6 is considered. If an exception in the second group of exceptions to medical improvement applies, the claimant's disability will be found to have ended.[6]

6. If medical improvement is shown to be related to the claimant's ability to do work or if one of the first group of exceptions to medical improvement applies, whether all the claimant's current impairments in combination are severe must be determined. The evidence shows that the current impairments in combination do not significantly limit the claimant's physical or mental abilities to do

---

[6] The second group of exceptions to medical improvement may be considered at any point in this process. They include:
    (1) A prior determination was fraudulently obtained;
    (2) The claimant does not cooperate with the SSA;
    (3) The SSA was unable to find the claimant; and
    (4) The claimant fails to follow prescribed treatment.
20 C.F.R. §404.1594(e)(1-4).

>basic work activities, the impairments will not be considered severe and the claimant will no longer be considered disabled.

>7. If the impairment is severe, and a claimant can still perform his past work, disability will be found to have ended.

>8. If a claimant's impairment prevents him from performing his past work, other factors including his age, education, past work experience, and residual functional capacity are considered to determine if other work can be performed.

20 CFR Sec. 404.1594(f)(1-8).

In the case at bar, the ALJ noted that Prejean has not engaged in any substantial gainful activity since the effective date of his disability in 1992. The ALJ found that Prejean suffers from the following severe impairments: status post thyroidectomy for Graves' disease and a history of hepatitis C.[7] The ALJ considered whether Prejean's condition had medically improved since the last time his case was reviewed and it was determined that he was disabled. The ALJ compared the medical evidence available at the time of the previous disability determination to the current medical evidence and concluded that Prejean has medically improved such that he now has the residual functional capacity to perform light work and is, therefore, no longer disabled.

### *Assignment of Errors*

Prejean raises the following ground for appeal: The ALJ erred in finding that Prejean's impairments had medically improved to a point that he was no longer disabled.

---

[7] Tr. 25.

## *Findings and Conclusion*

After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. §405(g), I find that the Commissioner's finding of non-disability as of May, 2002 is not supported by substantial evidence of record.

### I. *Administrative Record*

**Summary of medical history prior to favorable decision**: In January, 1992, Prejean began experiencing problems with his vision. Prejean was examined by Dr. E.P. Breaux, a surgeon, who referred him to Dr. Linda Lipstate, and endocrinologist.[8] Dr. Lipstate determined that Prejean's double vision and eye muscle hypertrophy were due to an overactive thyroid, which was caused by Graves' disease.[9] In April, 1992, Dr. Breaux performed a bilateral subtotal thyroidectomy. In May, 1992, Prejean continued to complain of blurred vision and Dr. Lipstate tested his eye movements and determined that he had "restricted lateral gaze and restricted upper gaze in the left eye."[10] Dr. Lipstate found Prejean to be completely disabled and she had "no way of knowing when his vision will allow him to return to work."[11]

On April 23, 1993, Dr. Lipstate sent a letter to the Social Security Administration stating:

> I have instructed [Prejean] not to do any heavy physical exertion such as bending, carrying, or lifting because this could have an adverse impact on his eyes. He is able to sit and stand and walk without significant problem. Part of

---

[8] Tr. 351.

[9] Tr. 338, 350.

[10] Tr. 338.

[11] Tr. 338.

his treatment regimen, in addition to medication, includes rest, adequate sleep, and proper nutrition. I do not advise him to do any physical labor until his eye problems are improved. He has already been in treatment for over a year without significant improvement. I anticipate he will have disability for another year and perhaps beyond. Eventually he will need surgery to help correct his focusing ability with the eyes. I have told him that his eyes and vision will never return to completely normal as a result of this disease process.[12]

**Medical records post-favorable decision**: On November 1, 1998, Prejean was examined at University Medical Center ("UMC") complaining of abdominal pain, vomiting, and diarrhea.[13] An ultrasound of his abdomen showed, "The gallbladder contained dependent sludge without evidence of calculi."[14] Prejean was diagnosed with pancreatitis.[15]

On September 28, 1999, Prejean underwent laparoscopic cholecystectomy with trucot needle biopsy of the liver.[16] The post-surgical diagnosis was mild chronic cholecystitis and chronic active hepatitis.[17]

On October 14, 1999, Prejean was examined by Dr. James Herrington, a gastroenterologist, concerning the hepatitis C.[18] Dr. Herrington discussed treatment options, but, considering Prejean's liver biopsy results and other factors, Dr. Herrington did not think that the medicine available at that time would be beneficial to Prejean.[19] On February 18,

---

[12] Tr. 329.

[13] Tr. 361.

[14] Tr. 354.

[15] Tr. 354.

[16] Tr. 279-280.

[17] Tr. 278.

[18] Tr. 392.

[19] Tr. 390.

2002, Prejean returned to Dr. Herrington and they discussed recent advances in hepatitis C treatment. Dr. Herrington referred Prejean to Dr. Fernando Alemany for additional treatment.[20] On February 26, 2002, Prejean was examined by Dr. Alemany.[21] Prejean complained of occasional chest pains, blurred vision, and problems with watery stools.[22]

At the request of Disability Determination Services ("DDS"), Prejean was examined by Dr. Johnny Stevens, an internist, on April 13, 2002.[23] Prejean complained of occasional swelling in his eyes and poor vision. Prejean advised that he can walk one-to-two blocks, stand one-to-two hours in an eight hour day, sit for thirty minutes, and lift up to 25 pounds. Dr. Stevens noted that Prejean has Graves disease and chronic hepatitis C, and that he was awaiting treatment for the hepatitis C. Prejean has mild exophthalmos (protruding eyeball[24]) and his vision is 20/25 bilaterally without glasses.

On May 2, 2002, the Social Security Administration ("SSA") had Dr. Erol Kosdereli, an internist and a non-examining medical consultant, conduct a Residual Functional Capacity Assessment.[25] The consultant concluded that Prejean could perform light work, with no climbing.

---

[20] Tr. 389.

[21] Tr. 436-439.

[22] Tr. 436.

[23] Tr. 446-448.

[24] See http://www.medterms.com/script/main/art.asp?articlekey=3355.

[25] Tr. 450-457..

On May 23, 2002, Prejean returned to Dr. Alemany to begin treatment for hepatitis C. On May 28, 2002, Dr. Alemany reported that Prejean suffers from chronic hepatitis C., hepatitis B., anemia, pancreatitis, gastritis, and hypothyroidism, and irritable bowel syndrome secondary to his liver malfunction. Dr. Alemany noted that the treatment for hepatitis C last about one year and will have several side effects, which will not prevent Prejean from focusing or concentrating on tasks.[26]

From May 23, 2002 to October 25, 2002, Prejean had weekly examinations and injections of Peg-Intron with Dr. Alemany.[27] During this time, Prejean complained of fatigue,[28] chest pains,[29] swelling of his abdomen, and shortness of breath.[30]

From January, 2001 to February, 2003, Prejean was treated by Dr. Bennett Baquet, an endocrinologist, for hyperthyroidism.[31] Prejean's thyroid hormone level varied, he complained of lack of energy, depression, and occasional diarrhea.

On February 21, 2003, Prejean returned to Dr. Alemany to discuss new treatment for hepatitis C. Prejean complained of abdominal swelling and tingling. On May 15, 2003, Prejean began Infergen injections.[32] Prejean complained that he experienced joint pain, shortness of breath, and insomnia while taking this medication.[33]

---

[26] Tr. 432.

[27] Tr. 403-433.

[28] Tr. 404, 405, 407, 408, 412, 413, 419, 425

[29] Tr. 414, 426, 427, 429.

[30] Tr. 408, 411, 417, 418, 420, 422, 424, 427.

[31] Tr. 364-385.

[32] Tr. 400.

[33] Tr. 395-398.

At the administrative hearing held on July 26, 2004, Prejean testified that he has blurry vision in the mornings, his eyes sometimes swell, he cannot see peripherally, and sometimes if he strains his eyes, they bulge out and he has to press against them to "put them back in place."[34] Prejean testified that although he can see straight ahead, he cannot focus on things.[35] Prejean explained that he was still receiving injections to control his hepatitis C.[36] He has relatively good days and bad days, when he is on edge. He cannot stand or walk for more than an hour and he has to change positions after twenty minutes.[37]

## II.   *ALJ's finding of medical improvement*

In 1993, an ALJ found that Prejean was disabled because the pain and limitations of his impairments precluded "the performance of any and all work activity on a sustained and consistent basis."[38] The ALJ further reasoned:

> [H]is visual impairment (thyroid ophthalmopathy[39] with double vision, eyelid retraction, and tear film abnormality) has significantly limited the claimant's ability to do work-related activities and is therefore a severe impairment... As a result of his condition, the claimant has less than the full range of sedentary work. I find that such assessment substantially erodes the otherwise available job base which the claimant could perform; therefore, section 201.00(h) of Appendix 2, Subpart P, Regulations No. 4 strongly recommends a finding of 'disabled.'[40]

---

[34] Tr. 501.

[35] Tr. 502.

[36] Tr. 497.

[37] Tr. 498-499.

[38] Tr. 173.

[39] Frequently termed Graves ophthalmopathy. See http://www.emedicine.com/oph/topic237.htm

[40] Tr. 171-172.

In reviewing his case to determine whether Prejean's benefits should be terminated, the ALJ concluded that he had medically improved since October, 1993.[41] Considering that Prejean now has 20/25 vision bilaterally without glasses, only mild exophthalmos, and does not dispute that the limitations posed solely by his eye problems have improved, the record supports the ALJ's conclusion that Prejean's thyroid ophthalmopathy with double vision, eyelid retraction, and tear film abnormality have medically improved.

### III. *Ability to engage in substantial gainful activity*

Prejean maintains, however, that despite medical improvement of some of his impairments, the medical evidence does not support the ALJ's decision that he is no longer disabled because he can perform light duty work.

Prejean's treating physician, Dr. Alemany, addressed all of Prejean's medical problems on May 28, 2002 as follows:

> The patient suffers from chronic hepatitis C., hepatitis B., anemia, pancreatitis, gastritis, and hypothyroidism. He also has irritable bowel syndrome secondary to his liver malfunction. He is under my treatment for chronic hepatitis C. This treatment will last about one year and will have many side effects. Most of them will not permit him to focus or concentrate on any particular task. He will need constant and very frequent medical visits to my office for the treatment of his condition and at their side effects.[42]

The record shows that Prejean's treatment for hepatitis C causes serious side effects such as shortness of breath, chest pains, fatigue, and abdominal pain. Treatment also requires Prejean to attend frequent medical appointments. Even if Prejean was able to obtain employment, he would

---

[41] Tr. 21.

[42] Tr. 432.

have to frequently miss work in order to receive treatment, and the side effects from treatment would adversely affect his ability to concentrate and focus at work.

In addition to the limitations posed by hepatitis C, the record shows that Prejean continues to experience some eye problems, even though his eye impairments are not individually disabling. Prejean testified that he has trouble focusing, cannot see peripherally, and has muscle strain that causes his eyes to bulge out. Since Prejean has Graves' disease, which causes eye problems, the medical evidence supports his complaints of limitations posed by his eye problems.

Despite the medical evidence and Prejean's complaints of disabling limitations, the ALJ determined that Prejean could perform light work jobs that existed in substantial number in the economy.[43] Although the ALJ is entitled to make credibility determinations, when medical evidence supports complaints of pain and the opinions of physicians, the ALJ must have good cause for his credibility decisions. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994);[44] Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir.

---

[43] Tr. 23.

[44] "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ is certainly able to decrease reliance on treating physician testimony for good cause. Leggett v. Chater, 67 F.3d 558, 566 (5th Cir. 1995). "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" Id

1987).[45] Moreover, an ALJ cannot rely on the opinion of a non-examining physician over that of a treating specialist. *See*, e.g., Barbee v. Barnhart, 2002 WL 31688886, *2 (5th Cir. 2002).[46]

The only medical evidence that supports the ALJ's RFC assessment is the opinion of the non-examining consultant, who determined that Prejean could perform light work. However, a review of the RFC assessment shows that the only medical evidence relied upon by the non-examining consultant was the DDS consultative examination by Dr. Stevens. The non-examining consultant did not have the medical reports from Prejean's treating physicians, particularly Dr. Alemany, who described Prejean's serious side-effects from his hepatitis C treatment and opined that these side effects prevent Prejean from performing work-related tasks such as concentration and focus. Likewise, Dr. Alemany explained that in order to get the injections for hepatitis C, and due to the many side effects associated with the injections, Prejean would have to visit Dr. Alemany's office frequently.

The non-examining consultant did not have Dr. Alemany's records, nor does it appear that he had any other medical records besides that of the consultative examiner. Despite this, the ALJ relied on the opinion of the non-examining consultant rather than the treating physician to find that Prejean could perform light work. The undersigned concludes that the ALJ erred in relying on the non-examining consultant and in effectively discounting Prejean's treating physician's opinion and Prejean's credibility without providing any basis for doing so. Without

---

[45] The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complains of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

[46] *Citing* Newton v. Apfel, 209 F.3d 448, 456-57 (5th Cir.2000) (cannot rely on opinion of non-examining physician over that of treating specialist); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir.1990) (ALJ may rely on a non-examining physician's assessment only where it does not contradict the examining physician); 20 C.F.R. §404.1527(d)(1) ( "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").

the non-examining physician's opinion, the record is void of evidence supporting the ALJ's determination.

As discussed above, prior to terminating benefits, there must be medical improvement in the originally disabling condition, as well as evidence that the claimant is capable, considering all of his current impairments, to engage in substantial gainful activity. 20 CFR Sec. 404.1594(f)(6)-(8). Considering the foregoing, the undersigned finds that the ALJ's determination that Prejean could perform substantial gainful activity that exists in significant numbers is not supported by substantial evidence. Prejean has vision problems and he suffers from chronic and severe hepatitis C. The treatment for hepatitis C causes serious side effects such as shortness of breath, chest pains, fatigue, and abdominal pain, and in order to undergo the treatment Prejean would have to miss work frequently.[47] Considering this, and the fact that the Prejean is now 52 years-old and has not worked in 15 years, the undersigned concludes that the ALJ erred in determining that Prejean was no longer entitled to disability benefits.

*Conclusion*

Considering the foregoing, it is recommend that the Commissioner's decision be **REVERSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and

---

[47] In order to be capable of engaging in substantial gainful activity, a person must have a realistic chance of both obtaining as well as holding a job in a realistic work setting:

> In [Wingo v. Bowen, 852 F.2d 827 (5th Cir.1988)], this Court held that a determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance, "once hired, of keeping the job." *Id.* at 831.

Watson v. Barnhart, 288 F.3d 212 (5th Cir. 2002).

recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on February 7, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, LA 70501
(337) 593-5140    FAX 593-5155

COPY SENT:
DATE: 2/7/07
BY:
TO: